UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GENEVA L. CROSE, | Case No. C15-5682RSM |
| Plaintiff, | |
| v. | ORDER ON SOCIAL SECURITY DISABILITY |
| CAROLYN COLVIN, | |
| Acting Commissioner of Social Security, | |
| Defendant. | |

## I.     INTRODUCTION

Plaintiff, Geneva Crose, brings this action pursuant to 42 U.S.C. §§ 405(g), and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her applications for Social Security and Supplemental Security Income disability benefits. This matter has been fully briefed and, after reviewing the record in its entirety, the Court AFFIRMS the Commissioner's decision.

## II.     BACKGROUND

Plaintiff filed an application for disability insurance benefits ("DIB") pursuant to 42 U.S.C. § 423 (Title II) and an application for Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act in November 2007. Tr. 26 and 124-31. The applications were denied initially and following reconsideration in March

ORDER ON SOCIAL SECURITY DISABILITY, PAGE - 1

and August of 2008, respectively.  Tr. 26 and 47.  Plaintiff requested a hearing, which was held before Administrative Law Judge ("ALJ") M.J. Adams on June 8, 2010.  Tr. 45-63.  On July 29, 2010, the ALJ issued a written decision in which the ALJ concluded that Plaintiff was not disabled pursuant to the Social Security Act.  Tr. 23-44.

On May 02, 2012, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review.  Tr. 1-8; 20 C.F.R. § 404.981.  Plaintiff then filed a Complaint in this Court seeking judicial review of the ALJ's written decision.  *See Crose v. Colvin*, Case No. C12-5590BHS.  On December 19, 2013, United States Magistrate Judge J. Richard Creatura issued a Report and Recommendation ("R&R") recommending that the matter be remanded for a new hearing on the basis that the ALJ had failed to properly evaluate the medical evidence.  *Id.* at Dkt. #19.  On January 13, 2014, United States District Judge Benjamin H. Settle adopted the R&R, and remanded the action.  Dkt. #20.

A new hearing was held before ALJ Gene Duncan on August 11, 2014.  Tr. 1735-1801. On December 15, 2014, the ALJ issued a 47-page decision, concluding that Plaintiff is not disabled.   Tr. 1675-1734.   Plaintiff requested review of the decision, which the Appeals Council denied.  Tr. 1663-1666 and 1672.  Plaintiff then filed the instant action.

### III.    JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

### IV.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by

substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## V.  EVALUATING DISABILITY

As the claimant, Ms. Crose bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir.

1999) (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity" ("SGA").  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If she is, disability benefits are denied.  If she is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  If the claimant does not have such impairments, she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20

---

[1] Substantial gainful employment is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, *i.e.*, performed for profit.  20 C.F.R § 404.1572.

C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## VI.    ALJ DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ found that:

**Step one:** Ms. Crose had not engaged in substantial gainful activity since September 11, 2006, the alleged onset date.  Tr. 1681.

**Step two:** Ms. Crose had medical impairments that caused more than a minimal effect on her ability to perform basic work activities.  Specifically, she suffered from the following "severe" impairments: history of left shoulder labral tear, status post-surgery; mild scoliosis and facet sclerosis of the lumbar spine; history of right knee arthroscopy; asthma/COPD;

---

[2] 20 C.F.R. §§404.1520, 416.920.

irritable bowel syndrome; obesity; depression; PTSD; somatoform disorder; and opioid dependence diagnosed in October of 2014.  Tr. 1681.

**Step three:** These impairments are not severe enough to meet the requirements of any listed impairment in Appendix 1, Subpart P, Regulations No. 4.  Tr. 1684-1685.

**Residual Functional Capacity:** Ms. Crose has the RFC to perform light work, which is defined in 20 CFR 404.1567(b) and 416.967(b) as work that involves lifting and carrying 20 pounds occasionally and 10 pounds frequently and standing and/or walking for up to 6 hours in an 8-hour workday.  Ms. Crose is able to perform simple, repetitive tasks.  She is able occasionally to perform postural movements, aside from crawling, which she cannot do.  She is unable to work with ladders, heights, hazards, heavy machinery, or vibrating equipment.  Ms. Crose is able to attend work activities on a sustained basis and is able to follow supervisors' written detailed instructions in a low stress work environment.  She would be involved in mental health counseling for 2 hours out of every month during non-work hours.  Ms. Crose would require a work environment that involved no direct access to controlled drugs.  The work would involve goals not numerical standards.  Ms. Crose would be off task for 6% of the work day in small increments.  She would be unable to perform security work or work that required her to make executive decisions.  Tr. 1687-1688.

**Step four:** Ms. Crose is capable of performing past relevant work as a cashier or as a fast food worker.  This work does not require the performance of work-related activities precluded by her RFC.  Tr. 1721.

**Step five:** If Ms. Crose stopped the substance use, an individual with her age, education, work experience, and RFC could work in a significant number of jobs in the national

economy, such as hop strainer, laundry worker, and maid; therefore, she is not disabled.  Tr. 1722-1723.

## VII.   ISSUES ON APPEAL

Plaintiff alleges the following assignments of error in this action:

1.  Whether the ALJ properly evaluated the medical evidence;

2.  Whether the ALJ properly evaluated Crose's testimony;

3.  Whether the ALJ improperly determined that Crose did not equal Listing 12.04; and

4.  Whether the ALJ properly assessed Crose's residual functional capacity, and erred by basing his step four and five findings on his erroneous residual functional capacity assessment.

Dkt. #11 at 2.

## VIII.   DISCUSSION

### A.  The ALJ's Evaluation of the Medical Evidence

Plaintiff first argues that the ALJ failed to properly evaluate the opinions presented by 15 different medical providers.  Dkt. #11 at 3-12.

*1.  The ALJ's Evaluations of Drs. Grayson, Wingate, Borisovskaya, Esparza, Golombeck and Connell, and ARNP Bennett*

As an initial matter, the Court finds that with respect to seven of the medical providers identified by Plaintiff, Plaintiff has failed to adequately explain the errors she believes that the ALJ committed in assessing their opinions.  Indeed, as to Dr. Sharon Grayson, ARNP Betty Bennett, Dr. Brian Esparza, Dr. Alison Golombeck and Dr. Sandra Connell, Plaintiff simply asserts in conclusory manner that the ALJ failed to provide legitimate reasons to reject their opinions, but fails to explain why.  Plaintiff further fails to cite to specific portions of the record or provide legal authority in support of her assertions.  *See* Dkt. #11 at 3-4 and 7.  As the Ninth

Circuit Court of Appeals has held, "[b]are assertions and lists of facts unaccompanied by analysis and completely devoid of caselaw fall far short" of appellate review requirements.  *See Sekiya v. Gates*, 508 F.3d 1198, 1200 (9th Cir. 2007).  Plaintiff argues that she is simply being "concise" with her arguments.  S*ee* Dkt. #15 at 2.  In fact, her arguments are nonexistent.

Similarly, with respect to Drs. Terilee Wingate and Anna Borisovskaya, Plaintiff summarizes their opinions, diagnoses, and the weight assigned by the ALJ, but then asserts in conclusory manner that: "Dr. Wingate's opinion is fully consistent with and supported by her objective clinical findings, and it is also consistent with the record," and "Dr. Borisovskaya's opinion is in fact consistent with Crose's activities, with Dr. Borisovskaya's clinical findings, and with the record as a whole."  Dkt. #11 at 3-5.  Plaintiff provides no other discussion or legal argument, and does not provide any citations to the record to support her assertions.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n. 2 (9th Cir. 2008) (declining to address an issue that the claimant failed to argue with specificity in his briefing).  Without the requisite specificity and analysis supported by the record, Plaintiff has not met her burden to show error, let alone that harmful error.  *See McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011) ("Where harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm.").  Accordingly, the Court finds no reason to conclude that the ALJ erred with respect to his assessment of any of these seven medical opinions.

### 2.   *The ALJ's Assessment of Dr. Dan Neims*

Plaintiff next objects to the assessment of psychologist Dan Neims' opinions.  Plaintiff asserts that "none of the ALJ's reasons [for partially rejecting the opinion of Dr. Neims] are legitimate."  Dkt. #11 at 5.  Specifically, Plaintiff argues that the ALJ erred "by failing to

acknowledge that there is a significant difference between being able to function at home and being able to function in a competitive work environment." Dkt. #11 at 6. The Court disagrees.

In *Fair v. Bowen*, 885 F.2d 597 (9th Cir. 1989), a case upon which Plaintiff relies, the Ninth Circuit Court of Appeals stated:

> There must therefore be some types of evidence capable of being introduced at a hearing on which an ALJ can rely to find a pain allegation incredible.
>
> One such type of evidence would be testimony about the claimant's daily activities. If the claimant runs marathons, as an extreme example, an ALJ could reasonably assume that the claimant's pain is not so debilitating as to prevent him from working. More realistically, if, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working.

*Fair*, 885 F.2d at 603.

In this case, the ALJ first gave "great weight" to Dr. Neims' assigned GAF score and his assessment of Plaintiff's ability to understand, remember and follow simple instructions, and her ability to exercise judgment and make decisions. Tr. 1713. Plaintiff does not appear to take issue with the ALJ's assignment of weight to these opinions.

Next, the ALJ gave "limited weight" to Dr. Neims' assessment of Plaintiff's ability to perform routine tasks and to relate appropriately to/interact with supervisors, co-workers, or the public, "finding insufficient evidence to support the ratings in the doctor's evaluation or in the record as a whole." Tr. 1713. The ALJ went on to explain the deficiencies with Dr. Neims' report addendum and his failure to support the ratings he assigned. He also noted the other parts of the record demonstrating Plaintiff's function that contradicted Dr. Neims' assessment. Tr. 1713-1714.

ORDER ON SOCIAL SECURITY DISABILITY, PAGE - 9

The ALJ then addressed Dr. Neims' opinion as to Plaintiff's responding appropriately to and tolerating the pressures and expectations of a normal work setting.  Tr. 1714.  He gave the opinion "very little weight because this domain does not address functioning that can be assessed in a 1-time evaluation."  *Id.*  He then relied on Plaintiff's counselor, Ms. Rohlman, who had concluded that Plaintiff was emotionally stable on medications and mentally able to handle a low-stress job."  *Id.*

Plaintiff does not refute the majority of the ALJ's reasons for his assessment of Dr. Neims' opinions.  Further, Plaintiff has not pointed to specific parts of the record demonstrating that the ALJ's assessment is erroneous or unreasonable.  Accordingly, the Court affirms the ALJ's assessment of Dr. Neims' opinions.

### 3.  The ALJ's Assessment of Dr. Michael Corpolongo

Plaintiff next objects to the assessment of psychologist Michael Corpolongo's opinions.  Plaintiff argues that "none of the ALJ's reasons [for giving "very little" weight to some of Dr. Michael Corpolongo's opinions] are legitimate," specifically because Plaintiff believes that the ALJ was acting as his own medical expert.  Dkt. #11 at 6.  As with many portions of Plaintiff's brief, Plaintiff simply summarizes Dr. Corpolongo's opinions, but fails to cite to any specific portions of the record in support of her objections or provide the Court with any supporting legal authority.  *See id.*  In any event, a review of the ALJ's entire assessment of Dr. Corpolongo's opinion reveals that the ALJ did not act as his own medical expert.  *See* Tr. 1714-1716.

The ALJ gave "great weight" or "substantial weight" to Dr. Corpolongo's opinions of Plaintiff's functioning in several domains.  Tr. 1714.  However, when it came to Plaintiff's limitations, he gave "very little weight" or "little weight" to the doctor's opinions.  Tr. 1715.

ORDER ON SOCIAL SECURITY DISABILITY, PAGE - 10

The ALJ reached that conclusion after an examination of the record as a whole, citing to numerous contradictory reports by Plaintiff.  Tr. 1715.  He also discounted Dr. Corpolongo's opinions on the basis that the doctor lacked the treating relationship required to assess some domains of functioning.  *Id.*  Further, he discounted certain opinions with respect to Plaintiff's physical impairments, noting that Dr. Corpolongo is a psychologist, who had not performed a physical evaluation of Plaintiff.  Tr. 1716.  Plaintiff does not refute the majority of the ALJ's reasons for his assessment of Dr. Corpolongo's opinions.  Further, Plaintiff has not pointed to specific parts of the record demonstrating that the ALJ's assessment is erroneous or unreasonable.  Accordingly, the Court affirms the ALJ's assessment of Dr. Corpolongo's opinions.

### 4.   The ALJ's Assessment of Dr. Enid Griffin

Plaintiff next argues that the ALJ improperly weighed psychologist Enid Griffin's opinions.  The ALJ gave "very little weight" to Dr. Griffin's opinions of Plaintiff's limitations primarily because he believed Dr. Griffin relied in large part on Plaintiff's self report.  Tr. 1716.  Plaintiff argues that the ALJ's conclusion is not supported by substantial evidence because "Dr. Griffin was able to base her opinion on the totality of her clinical observations." Dkt. #11 at 7.

Once again Plaintiff's arguments suffer from a failure to provide specific citations to the record or legal authority.  As the Commissioner notes, Dr. Griffin assessed several marked limitations in various areas of performing tasks and maintaining appropriate behavior in the workplace.  Tr. 1440-41.  The ALJ concluded that this assessment was not supported by Dr. Griffin's mental status examination findings, and were instead based primarily on Plaintiff's

ORDER ON SOCIAL SECURITY DISABILITY, PAGE - 11

subjective complaints.  Tr. 1716.  While Plaintiff argues that the clinical observations support Dr. Griffin's conclusions, she cites to none.

With respect to Dr. Griffin's assignment of a GAF score of 61 to 64 and her conclusion that there was no indication of significant memory issues that would prevent Plaintiff from managing simple tasks, the ALJ gave great weight to that assessment.  Tr. 1718.  However, Dr. Griffin also concluded that Plaintiff could engage in training and/or employment with intensive therapeutic interventions, and the ALJ gave this opinion "little weight," finding that it was an issue reserved to the Commissioner, and unsupported by the evidence in the record.  Tr. 1718; s*ee* 20 C.F.R. §§ 404.1527(d), 416.927(d) (explaining that an opinion that a person is "unable to work" is an issue reserved to the Commissioner that will not be given any special significance).  Plaintiff states that "Dr. Griffin was fully qualified to state an opinion on this issue."  Dkt. #15 at 6.  Yet, she provides no authority or other explanation for that bare assertion.

Finally, the ALJ gave significant weight to several mental limitations that Dr. Griffin assessed, but rejected a limitation in the ability to interact with others because there was insufficient evidence of anger or borderline traits in the record.  Tr. 1719.  Plaintiff has not challenged that conclusion.  For all of these reasons, the Court affirms the ALJ's assessment of Dr. Griffin's opinions.

### 5.  *The ALJ's Assessment of Dr. Jennifer Irwin*

Plaintiff next challenges the ALJ's rejection of part of psychiatrist Jennifer Irwin's opinion that the ALJ believed was based only on Plaintiff's subjective claims.  Dkt. #11 at 8. Again Plaintiff argues that the ALJ's conclusion is not supported by substantial evidence because "Dr. Irwin was able to base her opinion on the totality of her clinical observations, as

well as her review of the records that were provided to her." *Id.*  Plaintiff also asserts that the ALJ improperly rejected Dr. Irwin's diagnosis of a learning disorder.  *Id.*

The ALJ gave "little weight" to Dr. Irwin's opinion that Plaintiff would have difficulty interacting with co-workers and the public, and in performing work consistently.  Tr. 1717. The ALJ noted that the opinion was unexplained and had no support in Dr. Irwin's clinical observations.  *Id.*  While Plaintiff argues that "the totality of her clinical observations" support the opinion, she cites no clinical findings in the record to support that argument.

With respect to Dr. Irwin's diagnosis of a learning disorder, the Court notes that only medically determinable impairments can contribute to a finding of disability under the Social Security Act. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A); and 20 C.F.R. §§ 404.1505(a), 416.905(a).  A medically determinable impairment must be based on signs, symptoms, and laboratory findings.  20 C.F.R. §§ 404.1508, 416.908.  However, in making her diagnosis, Dr. Irwin cited no signs, symptoms, or laboratory findings.  Indeed, Plaintiff concedes there is no evidence of formal testing in the records.  Dkt. #11 at 8.  However, Plaintiff argues that her description of special education classes along with Dr. Irwin's clinical observations support a diagnosis of a learning disability.  Dkt. #11 at 8.  The Ninth Circuit has stated that "under no circumstances may the existence of an impairment be established on the basis of symptoms alone." *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005).  Accordingly, the ALJ was not unreasonable in rejecting the diagnosis.  For all of these reasons, the Court affirms the ALJ's assessment of Dr. Irwin's opinions.

   *6.  The ALJ's Assessment of Dr. Tanya Wilke*

Plaintiff next objects to the ALJ's assessment of treating physician Tanya Wilke's opinions, to which he gave "very little weight."  Dkt. #11 at 10.  Plaintiff argues that, as her

ORDER ON SOCIAL SECURITY DISABILITY, PAGE - 13

treating physician, Dr. Wilke's opinions must be given controlling weight, or, at the very least, proper deference. *Id.* at 10-11.  Based on a review of the relevant record, the Court finds Plaintiff's argument to be unpersuasive.

It is true that medical opinions and conclusions of treating doctors are accorded special weight because treating doctors are in a unique position to know claimants as individuals, and because the continuity of their dealings with claimants enhances their ability to assess the claimants' problems.  *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988); *Winans*, 853 F.2d at 647; *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("A treating physician's opinion is entitled to substantial weight.") (internal quotation marks and citation omitted); 20 C.F.R 20 § 404.1527(c)(2) (generally, more weight is given to treating sources, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations . . ."); 20 C.F.R. 404.927 (same).

The regulations provide that if a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight."  20 C.F.R. § 404.1527(d)(2).  Even if a treating physician's opinion is not entitled to controlling weight under the regulations, "treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R. §§ 404.1527 and 416.927]."  SSR 96-2p, 1996 SSR LEXIS 9.  When an ALJ discounts the opinion of a treating physician, the ALJ must identify "specific reasons for the weight given to the treating source's

ORDER ON SOCIAL SECURITY DISABILITY, PAGE - 14

medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the [] opinion and the reasons for that weight."  SSR 96-2p, 1996 SSR LEXIS 9 ("Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected.  Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927.  In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight."); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)).  Thus, even if the treating physician's opinion does not meet the test for controlling weight, his opinion may still be entitled to the greatest weight and should be adopted.  *See Orn*, 495 F.3d at 633.

In this case, the ALJ found that Dr. Wilke's opinion was inconsistent with all of the evidence in the record showing that Plaintiff regularly performed well on mental status examinations, which demonstrated the ability to perform simple tasks.  The ALJ further found that the opinion was inconsistent with the other medical opinions in the record that Plaintiff could perform at least simple tasks.  Tr. 1717.  The ALJ also found that there was insufficient evidence in Dr. Wilke's findings and the record as a whole to support the degree of physical limitations assessed.  Tr. 1717.

Plaintiff argues that because she had treated her for several years, Dr. Wilke had a "longitudinal basis" for her opinions.  However, Plaintiff does not address in any meaningful way the ALJ's lengthy discussion of her physical impairments and why the record

ORDER ON SOCIAL SECURITY DISABILITY, PAGE - 15

demonstrated that those impairments were less restrictive, with treatment providing control of the symptoms.  For example, the ALJ found that Plaintiff's shoulder injury improved promptly and resulted in no significant limitations in reaching, handling, or fingering.  Tr. 1703.  This is supported by the record.  Tr. 1689-1703 and 2650.  Likewise, the ALJ noted that Plaintiff's back impairment was mild, she exhibited a full range of motion, and her findings were normal for her age and resulted in no significant neurological findings.  Tr. 1703-04, 1514 and 2801-02.  The ALJ also concluded that her knee impairment was mild, noting that Plaintiff had been discharged from physical therapy having met her goals with minimal to no pain.  Tr. 1704 and 566.  Her asthma was largely controlled with medications, and her abdominal pain usually resolved spontaneously.  Tr. 1704.  Dr. Wilke's opinion was inconsistent with other substantial evidence in the record, including the opinions of Drs. Yerram, Golombek, Borisovskaya, Zaidi, Neims, Corpolongo, Irwin, Griffin, Almaraz, Harrison, and Gollogly, and Ms. Rohlman, each of whom assessed functional limitations that were less restrictive than Dr. Wilke and whose opinions the ALJ gave at least some weight.  As a result, Plaintiff has failed to demonstrate that the ALJ failed to either give Dr. Wilke's opinions controlling weight or the proper deference.  Accordingly, the Court affirms the ALJ's assessment.

### 7.  The ALJ's Assessment of Dr. Lewis Almaraz

Plaintiff next argues that the ALJ erred with respect to his assessment of the opinions of physician Lewis Almaraz because he "fail[ed] to discuss Dr. Almaraz's clinical findings, which are consistent with Dr. Wilke's opinion about Crose's limitations."  Dkt. #11 at 11.  This assertion is factually inaccurate.  The ALJ did discuss Dr. Almaraz's opinion at length.  Tr. 1701-1703.  Plaintiff cites no other errors with the ALJ's discussion of Dr. Almaraz's opinions.  Accordingly, the Court affirms the ALJ's assessment.

8.   *The ALJ's Assessment of Dr. Kristine Harrison*

Finally, Plaintiff objects to the ALJ giving "great weight" to consulting psychologist Kristine Harrison's opinions, but then failing to include in his residual functional capacity assessment all of the limitations described by Dr. Harrison.  Dkt. #11 at 12.  Plaintiff appears to have incorrectly characterized the opinion of Dr. Harrison, who did not find Plaintiff "markedly impaired" as Plaintiff asserts, but rather mildly to moderately limited.  Tr. 540-541.  Thus, Plaintiff fails to demonstrate any evidence that the ALJ purportedly did not account for in his RFC assessment.   As a result, the Court affirms the ALJ's assessment of Dr. Harrison's opinions.

**B.  The ALJ's Evaluation of Plaintiff's Testimony**

Plaintiff next contends that the ALJ failed to provide specific, clear and convincing reasons for questioning the credibility of Plaintiff's testimony regarding her mental and physical limitations.  Dkt. #11 at 12-16.  The Court disagrees.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence.  *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld."  *Morgan v. Commissioner of the Social Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility."  *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id*. The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

In the instant matter, the ALJ found that Plaintiff's allegations were not fully credible because secondary gain was an issue in this matter, Plaintiff's complaints were inconsistent with the medical evidence, Plaintiff had made inconsistent statements, Plaintiff's was non-compliant with treatment, and Plaintiff's activities undermined her credibility. Tr. 1703-1709. These conclusions were fully explained and are supported by the record. For instance, several providers expressed concern about secondary gain motivating Crose's complaints. Tr. 670, 810 and 2001. Further, the ALJ noted that Plaintiff had engaged in taking care of children, spending five days on a boat with friends, going to parties, engaging with friends on social media, riding four wheelers, completing household chores, cooking, and driving, and others. Tr. 1705-07. The Court agrees that this is inconsistent with her assertions that she could not perform even simple, light work.

The ALJ also found that the treatment history and objective findings undermined her credibility with respect to her physical and mental impairments. Tr. 1703 and 1705. The ALJ highlighted that Plaintiff had had little mental health counseling, that objective findings for her physical impairments were minimal, and she generally performed well on mental status examinations. Tr. 1703-05.

In addition, the ALJ discounted Plaintiff's testimony based on her inconsistent statements, particularly with respect to drug and alcohol use. Tr. 1708. "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." SSR 96-7p at *5. Significantly, Plaintiff does not deny making inconsistent statements. Rather, she argues they were "minor." Dkt. #11 at 14. It is for the ALJ to determine the severity of the inconsistencies. Inconsistent statements or lack of candor about one fact can cast doubt on a claimant's credibility regarding other facts. *See, e.g.*, *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010); *Thomas*, 278 F.3d at 959.

The ALJ also noted that Plaintiff had been non-compliant with treatment, but improved when she was compliant. *Tommasetti*, 533 F.3d at 1040 (Improvement with conservative treatment is a reason to discount an allegation of disabling symptoms.); *Molina*, 674 F.3d at 1113-14 (ALJ may rely on failure to follow a prescribed course of treatment when evaluating credibility). Plaintiff argues that the ALJ failed to account for her symptoms that remained when she was compliant, but she does not provide any specific citation in the record to support that.

Ms. Crose may believe the records should be interpreted differently, but she has not demonstrated that the ALJ's assessment of, and reliance on, the evidence in this case was irrational and or unsupported by the record. The ALJ adequately noted the contradictions between Plaintiff's statements to her doctors, her testimony at the hearing, and other evidence in the record. Accordingly, the Court finds that Plaintiff has not demonstrated the ALJ committed harmful error in her assessment of Plaintiff's credibility.

///

///

### C.  Step 3 and the ALJ's Assessment of Dr. Jay Toews

Plaintiff next argues that the ALJ erred in his Step 3 determination that Plaintiff's impairments did not meet or equal any listing.  Dkt. #11 at 16-17.  Specifically, Plaintiff takes exception to the ALJ's assessment of Dr. Jay Toews' opinions.  *Id.*  Plaintiff argues that the ALJ misinterpreted Dr. Toews' opinions, and should have understood that Dr. Toews, a psychologist, was basing his opinions on her mental impairments, not her physical impairments. *Id.*

Dr. Toews testified that Plaintiff would equal the requirements Listing 12.04 for depression, but he qualified his opinion:

> BY THE ADMINISTRATIVE LAW JUDGE:
>
> Q   Doctor, I don't quite understand.  If you agree with Dr. Nemes [sic] but you disagree with the premise that she could work because of the demands of work, which would cause decompensation.  So I don't – I'm not sure – and then throw in the question of narcotic drugs as to a contributing factor.
>
> So maybe you could unravel that for me.
>
> A   Okay.  Well, what I was agreeing with Dr. Nemes [sic] about was that psychological factors, **independently, would not preclude her ability to work.**  She has some physical problems that various physicians have indicated are likely to be pretty limiting with respect to her ability to sustain persistence in terms of a day or week, and that could interfere with attention and concentration and her ability to function in a job in that respect.  So that's what I was indicating agreement with in terms of his report.

Tr. 1766 (emphasis added).   The ALJ discounted Dr. Toews' opinion, noting that each psychologist had taken Plaintiff's subjective reports at face value, but that, for the reasons already discussed, Plaintiff was not as debilitated as she had reported.  Tr. 1682.  The ALJ also noted that psychologists are not qualified to opine about physical impairments.  Thus, the Court agrees that the ALJ reasonably discounted Dr. Toews' opinion as to Listing 12.04.

ORDER ON SOCIAL SECURITY DISABILITY, PAGE - 20

Dr. Toews also testified that:

> the problems that [Plaintiff] has are in the mild-impaired range.
>
> But she continues to profess and behave as though she has more severe kinds of problems, and this would come under psychological factors affecting physical condition.

Tr. 1765.  He observed that Plaintiff had reported prolonged panic attacks that would be "extremely unusual and highly questionable," but that he could not assess whether they were volitional.  Tr. 1769.  Dr. Toews attributed these findings to psychological factors, but the ALJ found that Plaintiff was motivated by secondary gain and negative impression management.  Tr. 1720.  Additionally, the ALJ noted that Dr. Toews had relied on the fact that Plaintiff gave up custody of her child because she felt she could not care for her adequately, citing that as an example of her poor skills coping with stress.  *See* Tr. 1720 and 1768.  However, as the ALJ pointed out, Plaintiff asked her parents to care for her child because she thought they could better care for her child financially, and when she regained custody, she did not decompensate.  Tr. 1720.  As discussed above, it was for the ALJ to determine credibility issues in this matter, and he reasonably discounted her testimony.

The ALJ is responsible for resolving internal inconsistencies in a medical opinion and determining whether such inconsistencies are material and whether they justify discounting the opinion.  *Morgan*, 169 F.3d at 603.  In this case, the ALJ reasonably found inconsistencies between Dr. Toews opinion and other evidence in the record.  Therefore, the Court affirms the ALJ's Step 3 analysis.

### D.  Step Five Analysis

Finally, Plaintiff argues that the ALJ committed error at Step 5 because it is not supported by substantial evidence.  Dkt. #11 at 18.  Specifically, Plaintiff argues that the ALJ

erred by failing to include that Plaintiff has impaired attention and concentration, she needs to be able to change positions as will between sitting, standing, and walking, she would require extra breaks and absences, and she cannot handle the stress of competitive work or maintain regular attendance. Dkt. #11 at 18. The Commissioner failed to respond to this argument.

At step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *See Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). *Tackett*, 180 F.3d at 1100-1101; *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000). An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. *See Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

As the Court has already determined, the ALJ properly evaluated Ms. Crose's impairments. The ALJ included those impairments in his hypotheticals to the VE, Dr. Moisan. Tr. 1783-1800. Plaintiff's attorney also questioned Dr. Moisan about why he believed certain representative jobs met the hypothetical criteria. Tr. 1790-1796. Although Ms. Crose does not agree with the ALJ's conclusion, the Ninth Circuit has held that "[w]here evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Accordingly, the

ORDER ON SOCIAL SECURITY DISABILITY, PAGE - 22

Court finds that Plaintiff has failed to demonstrate harmful error in the ALJ's Step 5 determination.

## IX.    CONCLUSION

For the foregoing reasons, the Court hereby finds that the ALJ properly concluded Plaintiff was not disabled.  Accordingly, Defendant's decision to deny benefits is AFFIRMED.

DATED this 16 day of August, 2016.


RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE